■ Lena Ellinghusen, Appellant, v Flushing Hospital & Medical Center, Respondent, et al., Defendants.—In a medical malpractice action to recover damages for personal inju-

ries, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Lonschein, J.), dated December 12, 1986, which, upon granting the respondent's motion to set aside the jury verdict in favor of the plaintiff and against it, is in favor of the respondent and against the plaintiff.

Ordered that the judgment is reversed, on the law and on the facts, with costs, the jury verdict is reinstated, and the matter is remitted to the Supreme Court, Queens County, for entry of an appropriate judgment.

On June 7, 1981, the plaintiff was admitted to the defendant Flushing Hospital through its emergency room in critical condition, suffering from a strangulated umbilical hernia which had perforated her bowel, causing fecal matter to leak into her abdomen and resulting in peritonitis. The plaintiff— who at the time of her admission was 65 years of age, four-feet, six-inches in height and 238 pounds in weight—underwent emergency surgery the next day and was placed in the intensive care unit, where she developed a sacral decubitis ulcer, or bedsore, on her buttocks, described more particularly by the nurses' notations, dated June 14, 1981, as an excoriated area of approximately five centimeters by five centimeters in the sacral area. The bedsore became infected and ultimately necessitated corrective plastic surgery in July of 1981 at which time a section of the plaintiff's sacral coccygeal bone was removed and extensive skin grafting performed. Following the plaintiff's discharge, she was rehospitalized in January 1982 and July 1982 for further surgical repair. The plaintiff testified that the ulcer or bedsore still "drains and bleeds", that it must be treated constantly with an antiseptic, and that she experiences back pain requiring the use of a cane or walker.

At the trial of the plaintiff's action, it was her principal contention that the hospital staff and her attending physicians, Drs. Iraci and Creedon, departed from good and accepted medical practice by failing, during her convalescence in the intensive care unit, to provide her with the proper skin care necessary to prevent the development of the bedsore.

More specifically, the plaintiff sought to establish through, *inter alia,* the testimony of her expert, Dr. Richard Kessel, that the respondents failed to ensure that she was turned on her side at least every two hours so as to prevent the incidence of bedsores to which, all parties agreed, she was prone by virtue of her poor health and weight. Dr. Kessel's conclusion that the respondents had failed to have the plaintiff

turned at least every two hours—as required by a nursing protocol issued by the hospital, was premised on his contention that: (1) the nursing notations made while the plaintiff was in the intensive care unit failed to reflect that such a turning procedure was performed every two hours, although the nurses who testified on the respondent's behalf stated that they did so turn the plaintiff, and (2) that the development of the bedsore itself "implies" that the plaintiff was not being turned often enough. It was also Dr. Kessel's opinion that it was a departure from good and accepted medical practice and one of the competent producing causes of the plaintiff's injury for the nursing staff to have failed to immediately supply the plaintiff with an air mattress from the inception of her placement in the intensive care unit on June 8, 1981.

The jury found in the plaintiff's favor as against the hospital, awarding her damages in the amount of $250,000. Thereafter, the trial court granted the hospital's motion for judgment as a matter of law, and dismissed the complaint. The court concluded that Dr. Kessel impermissibly relied upon the absence of nursing notations as evidence that the plaintiff was, in fact, not turned every two hours (citing *Topel v Long Is. Jewish Med. Center,* 55 NY2d 682) and further determined that Dr. Kessel's contention that the injury itself "implies" improper nursing care did not constitute a ground upon which an inference of negligence could be premised. The court did not address the testimony in respect to the failure to provide the plaintiff with an air mattress. The plaintiff now appeals. We reverse and reinstate the jury verdict.

As this court has observed, "[t]o sustain a determination that a jury verdict is not supported by sufficient evidence as a matter of law, there must be 'no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial' " *(Nicastro v Park,* 113 AD2d 129, 132, quoting from *Cohen v Hallmark Cards,* 45 NY2d 493, 499, *on remand* 70 AD2d 509). Moreover, "[t]he test is a harsh one because a finding that a jury verdict is not supported by sufficient evidence leads to a directed verdict terminating the action without resubmission of the case to a jury" *(Nicastro v Park, supra,* at 132).

Contrary to the respondent's contention, there is a valid line of reasoning by which the jury could rationally have reached the conclusion it did with respect to the negligence of the respondent hospital. At the trial, the plaintiff's expert testified that it was a departure from good nursing practice to

have failed to provide the plaintiff with an air mattress as soon as she entered the intensive care unit on June 8, 1981, which departure represented a substantial contributing factor to the development of the bedsore. Moreover, there was testimony from which the jury could infer that the three days between June 13, 1981—when the bedsore was discovered—and June 16, 1981—when the air mattress was obtained—represented a particularly crucial period, during which the use of the mattress could have contributed substantially to the prevention of the deterioration of the plaintiff's condition and thereby materially lessened the possibility of infection due to fecal contamination. By reason of the foregoing, there existed a valid line of reasoning and permissible inferences supporting the conclusion reached by the jury. *(see, Nicastro v Park, supra)*. Furthermore, the verdict was not contrary to the weight of the evidence. Kooper, J. P., Sullivan, Harwood and Balletta, JJ., concur.