DOROTHY NICASTRO, Individually and as Administratrix of the Estate of ALEXANDER NICASTRO, Deceased, Respondent, v MARION PARK, as Executrix of FRED E. PARK, Deceased, et al., Appellants, and BRUNSWICK HOSPITAL CENTER et al., Respondents.

Second Department, November 12, 1985

**APPEARANCES OF COUNSEL**

*Rivkin, Leff, Sherman & Radler (Frank L. Amoroso* and *Nancy K. Eisner* of counsel), for Marion Park, appellant.

*Kelly, Rode, Kelly & Burke (Joseph A. Suozzi* and *Daniel M. Kolko* of counsel), for Barbara S. Mermelstein, appellant.

*Shayne, Dachs, Stanisci & Corker (Norman H. Dachs* and *Steven M. Jaeger* on the brief), for Dorothy Nicastro, respondent.

*Diamond, Rutman & Costello (Seligson, Rothman & Rothman [Martin S. Rothman, Mitchell R. Block* and *Alyne I. Diamond]* of counsel), for Brunswick Hospital Center, respondent.

## OPINION OF THE COURT

LAZER, J. P.

Resolution of these appeals involves the proper standard to be applied by a trial court in deciding a motion to set aside a jury verdict as contrary to the weight of the evidence. At specific issue is the correctness of the trial court's grant of a motion to set aside a jury's verdict in favor of appellants in a medical malpractice action in which it was claimed that the death of Alexander Nicastro was brought about by the negligence of Drs. Fred Eugene Park and Richard H. Mermelstein, plus certain others against whom the complaint was dismissed during the trial. Since Dr. Mermelstein died prior to the commencement of the action and Dr. Park died subsequent to its commencement but before the trial, none of the principal participants in the events underlying the action survived to testify at the trial. As a result, all parties relied heavily on relevant medical records and other documentary evidence as well as upon portions of an examination before trial of Dr. Park. There was also, of course, testimony by numerous medical experts.

At the conclusion of the lengthy trial, the jury rendered a special verdict in favor of appellants. The first question relating to each appellant in the special verdict form was whether the defendant was negligent, and, as to each, the jury's answer was "no". The jury was also instructed that if it answered the negligence question affirmatively with respect to any defendant, it was to determine whether the negligence of that defendant was a proximate cause of Nicastro's death. The jury found that neither defendant was negligent and the proximate cause questions were thus never reached.

Upon hearing the jury's verdict, plaintiff moved to set it aside and for a new trial pursuant to CPLR 4404 (a). The court granted the motion on two separate grounds, finding that the verdict was against the weight of the evidence and that the interest of justice demanded a new trial because the interests of the decedent's children had not been properly protected by their mother, who had brought the suit as administratrix and on her own behalf. The appeals are from the order embodying that decision.

We conclude that the trial court did not abuse its discretion in finding that the verdict was against the weight of the evidence. In so holding, we note that appellants' arguments addressed to the proximate cause issue are misplaced, for the jury never reached that question and a prima facie case as to proximate cause was made out even though it was something short of overwhelming. Nor need we reach the issue of whether the children's interests were properly protected by the mother because a new trial is necessary in any event and we have been informed that Dorothy Nicastro has since been replaced as administratrix by the Suffolk County Public Administrator.

In contending that the trial court abused its discretion by setting aside the verdict as against the weight of the evidence, appellants vigorously argue that the court improperly substituted its judgment for that of the jury. The plaintiff responds that the strength of her proof of negligence was such that this court should not interfere with the discretionary action of the Trial Judge who was in a better position to assess the testimony. The question, then, is whether the court properly exercised its discretion under the circumstances.

Judicial dissatisfaction with jury verdicts is hardly a new phenomenon, although at one time the consequences of judicial displeasure were potentially somewhat greater. Blackstone noted that English Judges were once permitted to fine, imprison or otherwise punish juries that persisted in returning verdicts contrary to the court's instructions in criminal cases, although the practice had been abandoned by the time the Commentaries were written (4 Blackstone, Commentaries on the Laws of England, ch 27, at 361 [5th ed 1773]).

On the civil side, it was well settled by Blackstone's day that a jury verdict could be set aside and a new trial ordered if the verdict was contrary to the evidence or if for some other reason it appeared that substantial justice had not been done. This was deemed to be an intrinsic part of a viable judicial system, for it was believed that the acceptance of clearly erroneous verdicts would cause the courts to fall into disrepute (see, 3 Blackstone, Commentaries on the Laws of England, ch 24, at 387-393 [5th ed 1773]). Thus, the doctrine that permits judicial interference with jury verdicts had its origin in the idea that for a judicial system to function properly it must be perceived by the public as normally reaching the correct result. While this certainly remains true, current

concepts may have shifted the focus to the desire to provide every litigant with substantial justice.

The power to set aside a jury verdict and order a new trial is an inherent one *(McCarthy v Port of N. Y. Auth.,* 21 AD2d 125, 127; Siegel, NY Prac § 406, at 537; 66 CJS, New Trial, § 2) which is codified in New York in CPLR 4404 (a). That statute provides that a court may order a new trial "[when] the verdict is contrary to the weight of the evidence, in the interest of justice or where the jury cannot agree". The power is a broad one intended to ensure that justice is done *(see,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.02), but the proper standard for setting aside a jury verdict is elusive and has long defied precise definition *(see,* 3 Blackstone, Commentaries on the Laws of England, ch 24, at 387 [5th ed 1773]; *Mann v Hunt,* 283 App Div 140; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.9). Nevertheless, a close examination of the precedents reveals several principles that may be of assistance in outlining the parameters of the judicial function of such a motion.

Initially, it must be reemphasized that whether a jury verdict is against the weight of the evidence is essentially a discretionary and factual determination which is to be distinguished from the question of whether a jury verdict, as a matter of law, is supported by sufficient evidence *(Cohen v Hallmark Cards,* 45 NY2d 493, 498-499; *accord, Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.,* 46 NY2d 528, 532; 4 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 4404.02, 4404.06). As the Court of Appeals has observed, "[a]lthough these two inquiries may appear somewhat related, they actually involve very different standards and may well lead to disparate results" *(Cohen v Hallmark Cards, supra,* at p 498). To sustain a determination that a jury verdict is not supported by sufficient evidence as a matter of law, there must be "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" *(Cohen v Hallmark Cards, supra,* at p 499; *accord, Licari v Elliott,* 57 NY2d 230, 239-240). The test is a harsh one because a finding that a jury verdict is not supported by sufficient evidence leads to a directed verdict terminating the action without resubmission of the case to a jury *(see, e.g., Benjamin v City of New York,* 64 NY2d 44; *Licari v Elliott, supra,* at pp 239-240).

The criteria for setting aside a jury verdict as against the

weight of the evidence are necessarily less stringent, for such a determination results only in a new trial and does not deprive the parties of their right to ultimately have all disputed issues of fact resolved by a jury *(Cohen v Hallmark Cards, supra,* at p 498; *McDonald v Metropolitan St. Ry. Co.,* 167 NY 66; *O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 439; *cf. Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499). Whether a jury verdict should be set aside as contrary to the weight of the evidence does not involve a question of law, but rather requires a discretionary balancing of many factors *(Cohen v Hallmark Cards, supra,* at p 499; *Mann v Hunt,* 283 App Div 140, *supra; Walsh v Morris,* 88 AD2d 673; *see, Durante v Frishling,* 81 AD2d 631, *appeal dismissed* 54 NY2d 833; *Facteau .v Wenz,* 78 AD2d 931). The discretionary nature of this inquiry has been further highlighted by various determinations of the Court of Appeals declining to review motions to set aside verdicts on the ground that it "cannot re-examine the Appellate Division's exercise of discretion" in this area *(Gutin v Mascali & Sons,* 11 NY2d 97, 98; *accord, Moffatt v Moffatt,* 62 NY2d 875, 877; *Vadala v Carroll,* 59 NY2d 751, 752-753; Cohen & Karger, Powers of the New York Court of Appeals § 148, at 588 [rev ed]; *see also, Micallef v Miehle Co.,* 39 NY2d 376, 381-382).

The fact that determination of a motion to set aside a verdict involves judicial discretion does not imply, however, that the trial court can freely interfere with any verdict that is unsatisfactory or with which it disagrees. A preeminent principle of jurisprudence in this area is that the discretionary power to set aside a jury verdict and order a new trial must be exercised with considerable caution, for in the absence of indications that substantial justice has not been done, a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, not the trial court, and a court must act warily lest overzealous enforcement of its duty to oversee the proper administration of justice leads it to overstep its bounds and "unnecessarily interfere with the fact-finding function of the jury to a degree that amounts to an usurpation of the jury's duty" *(Ellis v Hoelzel,* 57 AD2d 968, 969; *accord, Zolli v Dubois,* 88 AD2d 951; *Durante v Frishling, supra; Facteau v Wenz, supra,* at p 932). This is especially true if a verdict is contested solely on weight of the evidence grounds and interest of justice factors have not intervened to flavor the judicial response to the motion. Absent such complications, the challenge is directed

squarely at the accuracy of the jury's fact finding and must be viewed in that light.

Analysis of the cases reveals that particular deference has traditionally been accorded to jury verdicts in favor of defendants in tort cases because the clash of factual contentions is often sharper and simpler in those matters and the jury need not find that a defendant has prevailed by a preponderance of the evidence but rather may simply conclude that the plaintiff has failed to meet the burden of proof requisite of establishing the defendant's culpability *(see, Jarchover v Dry Dock, E. Broadway & Battery R. R. Co.,* 54 App Div 238; *Mieuli v New York & Queens County Ry. Co.,* 136 App Div 373; *Collins v City of New York,* 263 App Div 893; *Pertofsky v Drucks,* 16 AD2d 690; Siegel, NY Prac § 406).

Thus, it has often been stated that a jury verdict in favor of a defendant should not be set aside unless "the jury could not have reached the verdict on any fair interpretation of the evidence" *(Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643; *Tripoli v Tripoli,* 83 AD2d 764, *affd* 56 NY2d 684; *Tannenbaum v Mandell,* 51 AD2d 593; *Pertofsky v Drucks, supra).* A similar "fair interpretation" standard has since come to be applied as well to jury verdicts in favor of a plaintiff *(see, Moffatt v Moffatt,* 86 AD2d 864, *affd* 62 NY2d 875, *supra; O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 439, *supra; Loeb v Teitelbaum,* 77 AD2d 92, 103, *rearg denied & decision amended* 80 AD2d 838; *Marshall v Mastodon, Inc.,* 51 AD2d 21, 23), especially in these days of comparative fault.

The history of the fair interpretation standard indicates that it was intended to accentuate the principle that when a jury, upon being presented with sharply conflicting evidence creating a factual dispute, resolved the controversy in favor of the defendant upon a fair interpretation of the evidence, that finding should be sustained *(Jarchover v Dry Dock, E. Broadway & Battery R. R. Co., supra,* at p 240) in the absence of some other reason for disturbing it in the interest of justice.

Although at first glance the fair interpretation phraseology might seem to reduce the weight of the evidence question to one of law, this merely serves to illustrate the danger of relying upon set phrases rather than underlying principles. Catechistic use of the terminology cannot transform an intrinsically discretionary judicial function into the more constrained approach appropriate to the resolution of a question as a matter of law. It is well settled that a motion to set aside

a verdict as contrary to the weight of the evidence invokes the court's discretion, and resolution of such a motion involves an application of that professional judgment gleaned from the Judge's background and experience as a student, practitioner and Judge *(see, Mann v Hunt, supra,* at p 141; Siegel, NY Prac § 406; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.09). The significance of the fair interpretation standard is that it provides a strong cautionary note by stressing to the court that the overturning of the jury's resolution of a sharply disputed factual issue may be an abuse of discretion if there is any way to conclude that the verdict is a fair reflection of the evidence.

It is significant, however, that the mere fact that some testimony in the record has created a factual issue does not deprive the Trial Judge of the power to intervene in an appropriate case *(see, e.g., Lion v St. John's Queens Hosp.,* 86 AD2d 863; *Allen v Woods Mgt. Co.,* 86 AD2d 530; *compare, Calla v Becker,* 100 AD2d 950, *with Weber v City of New York,* 101 AD2d 757, *affd* 63 NY2d 886). To require the complete absence of factual issues as a condition precedent to setting aside a jury verdict would indeed transform the question into one of law and would ignore the distinction between setting aside a verdict because of insufficiency and doing so because it is against the weight of the evidence. In comparing the two standards in the context of a plaintiff's verdict, we stated in *O'Boyle v Avis Rent-A-Car Sys. (supra,* at p 439) that "[r]ationality, then, is the touchstone for legal sufficiency, while fair interpretation is the criterion for weight of the evidence". Although the language of the two inquiries, viewed out of context and without regard for conceptual distinctions, is not dissimilar, there is a real difference between a finding that no rational jury could reach a particular resolution and a finding that a jury could not have reached its conclusions on any fair interpretation of the evidence *(see, Cohen v Hallmark Cards,* 45 NY2d 493, 498-499, *supra; O'Boyle v Avis Rent-A-Car Sys., supra,* at p 439). Were this not so and if an absence of bona fide factual issues were required, a court would never be justified in setting aside a defendant's verdict as being against the weight of the evidence and ordering a new trial, for in each such case the proper remedy would be entry of judgment notwithstanding the verdict. Indeed, it is the existence of a factual issue which justifies the granting of a new trial rather than a directed verdict *(see, Cohen v Hallmark Cards, supra,* at p 499; *Middleton v Whitridge,* 213 NY 499, 507-508).

It is, perhaps, the adjective "fair" which differentiates the two ideas most aptly although the concept is as elusive as the standard it is used to illuminate. Webster's Third New International Dictionary (815) defines "fair" as "characterized by honesty and justice: free from fraud, injustice, prejudice, or favoritism". In a further comment, the same lexicographers distinguish "fair" from synonyms such as "just", "equitable", "impartial", "unbiased" and others by describing "fair" as the most general of the terms and implying "a disposition in a person or group to achieve a fitting and right balance of claims * * * or * * * a quality or result in an action befitting such a disposition". "Fair" is thus a broad and multifaceted concept that at various times may include definitions adopted by courts in other jurisdictions which have resorted to synonyms such as just, equitable, evenhanded, honest, impartial, reasonable, upright and free from suspicion of bias (see, Black's Law Dictionary [4th ed]; 35 CJS, Fair, at 597).

However the particular Judge faced with deciding the motion to set aside might view the word "fair" if that were the sole ingredient of the fair interpretation formula, the fact remains that this is not the only ingredient. That respect which is to be accorded the jury's determination must enter into the decision as well. Combining these two factors, the rubric that a defendant's verdict in a tort case can only be overturned if a jury could not have reached it "by any fair interpretation of the evidence" simply restates the guiding principle that in reviewing the whole trial to ascertain whether the conclusion was a fair reflection of the evidence, great deference must be given to the fact-finding function of the jury. While this approach clearly tilts the scales in favor of a verdict's survival, it leaves the court with a breadth of discretion which obviously varies with the facts and events in each case.

Clearly, that discretion is at its broadest when it appears that the unsuccessful litigant's evidentiary position was particularly strong compared to that of the victor. At that point, the question is whether the result the jury reached is so contrary to the conclusion that might fairly have been reached on the basis of the evidence that the court should exercise its power to overturn the jury's determination. Upon appellate review of the exercise of that power, the Judge's presence during the trial is a significant factor. Not only has the trial court heard and seen the witnesses testify, but it also has had the opportunity to observe courtroom events that

might have influenced the jury's evaluation of the evidence while not at the same time achieving a magnitude that would warrant reversal under the interest of justice provision of CPLR 4404 (a). What emerges, therefore, as a principle of appellate review, is that the trial court's decision to exercise its discretion and order a new trial must be accorded great respect *(see, e.g., Micallef v Miehle Co., supra; Mann v Hunt, supra;* Siegel, NY Prac § 406; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.06). That respect compels the appellate tribunal to view with liberality the trial court's disposition of a motion to set aside on evidentiary considerations—not only because the trial court is in the best position to properly assess the evidence presented at trial, but also because judicial independence of mind in making that determination is an essential "ingredient to the sound health of the judicial process" *(Mann v Hunt,* 283 App Div 140, 141, *supra,* citing *Lipshitz v Sloan,* 280 App Div 855; *accord, Micallef v Miehle Co., supra,* at p 381; *Fotiu v Ewing,* 90 AD2d 602; *Walsh v Morris,* 88 AD2d 673, *supra; Facteau v Wenz,* 78 AD2d 931, *supra; Ellis v Hoelzel,* 57 AD2d 968, *supra;* Siegel, NY Prac § 406; 4 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 4404.01, 4404.02, 4404.06, 4404.09). What the appellate court reviews, after all, is the conclusion reached by the judicial participant in the trial who has attempted to balance the great deference to be accorded to the jury's conclusion against the court's own obligation to see that the jury's interpretation of the evidence was fair.

Applying these principles to the case at hand, we conclude that the record was so replete with evidence of negligence that the trial court did not abuse its discretion in setting aside the verdict and ordering a new trial. Alexander Nicastro died on July 10, 1977 as a result of a coronary thrombosis due to occlusive coronary atherosclerosis. Nicastro, then a 35-year-old welder who owned a small welding company, had previously been hospitalized twice due to chest pains indicative of a coronary problem. On both occasions Dr. Park, his family physician, was his attending physician. During the first hospitalization, in May of 1976, Dr. Mermelstein was called in for consultation because Dr. Park's limited privileges at the hospital required him to obtain consultation for treatment of cardiac failure. Although the evidence at trial indicated that Nicastro was suffering from a developing myocardial infarction, which is a result of atherosclerosis, Dr. Mermelstein misdiagnosed the problem as a virally induced pleurodynia on the basis of test results which even appellants' experts admit-

ted were inconclusive at best and in the absence of numerous symptoms normally associated with virally induced pleurodynia. Moreover, after making this diagnosis, Dr. Mermelstein withdrew from the case and did not follow up on those test results which were inconsistent with his diagnosis.

As to Dr. Park, the record indicates no attempt to follow up electrocardiograms and other test reports which suggested a developing infarction both before and after Dr. Mermelstein's withdrawal. Moreover, the record indicates that Nicastro, a heavy smoker and coffee drinker whose work involved physical labor, was released to normal activity. There is no indication that he was given any treatment or even advised to change his life-style to avoid coronary risk factors, despite Park's belief, as indicated by his testimony at an examination before trial, that Nicastro was disabled and unable to work from May 1976 to the date of his death because he suffered from a coronary insufficiency.

Similarly, during the second hospitalization in February of 1977, Dr. Park failed to order appropriate tests and appears to have discharged Nicastro without adequate treatment. Indeed, in June of 1977, Dr. Park filled out a Social Services form in connection with Nicastro's application for disability, in which he stated that Nicastro, a welder, suffered only from a "coronary neurosis", could work full time without limitation, and was receiving no treatment.

Although appellants' experts testified that Park and Mermelstein had acted in accordance with accepted medical standards in the community, they also agreed that the test results were inconclusive at best, that further testing would have been helpful, and that the records were barren of any indication of treatment for a coronary problem. Weighing the persuasive and consistent testimony of plaintiff's experts and the stark proof of the documentary evidence against the pro forma declarations of appellants' experts and the deference to be given the jury's reaction to what it saw and heard, we conclude that the trial court did not abuse its discretion in setting aside the verdict as against the weight of the evidence.

Accordingly, the order dated August 18, 1983 setting aside the verdict and ordering a new trial should be affirmed, with costs to abide the event.

MANGANO, BRACKEN and NIEHOFF, JJ., concur.

Appeals from the order dated April 6, 1983 and the reset-

tled order dated June 14, 1983 dismissed. Those orders were superseded by the order dated August 18, 1983.

Order dated August 18, 1983 affirmed.

Any award of costs is to abide the event of the new trial.