■ FRANCES G., Respondent, v VINCENT G., Appellant.—In an action for a divorce and ancillary relief, the defendant husband appeals from a judgment of the Supreme Court, Westchester County (Wood, J.), dated June 27, 1986, which, *inter alia,* awarded the plaintiff wife a divorce on the ground of constructive abandonment. By decision and order of this court dated August 31, 1987, the judgment was affirmed, the majority finding that the trial court properly had set aside the jury verdict in favor of the defendant and awarded judgment in favor of the plaintiff wife as a matter of law *(Frances G. v Vincent G.,* 133 AD2d 254). By order dated May 26, 1988, the Court of Appeals reversed the order of this court on the ground that the defendant's trial testimony that the termination of sexual relations between the parties was by mutual consent or acquiescence provided a rational basis for the jury's verdict *(Frances G. v Vincent G.,* 71 NY2d 1001). The Court of Appeals concluded that the plaintiff was not entitled to a judgment on her cause of action for a divorce on the ground of

constructive abandonment, as a matter of law, and remitted the matter to this court for consideration of factual issues raised by the branch of the plaintiff's posttrial motion which was to set aside the jury's verdict on her cause of action for a divorce on the ground of abandonment as against the weight of the evidence.

Ordered that the judgment is reversed, on the facts, with costs, the branch of the plaintiff's posttrial motion which was to set aside the jury's verdict on her cause of action for a divorce on the ground of abandonment is denied, the jury verdict on that cause of action is reinstated, that cause of action is dismissed, and the matter is remitted to the Supreme Court, Westchester County, for consideration of the ancillary demands for relief and the making of an award therefor in its discretion; the provisions of the judgment regarding child custody, visitation, exclusive possession of the marital residence, support, maintenance and insurance shall stand as interim awards pending the determination of the Supreme Court, Westchester County, upon remittal.

Reviewing the facts of the instant case, we find that there was sufficient evidence of consent and/or acquiescence on the part of the plaintiff to support the jury verdict against her on the cause of action grounded on constructive abandonment. It is the proper function of the jury to assess the credibility of witnesses, to resolve conflicting testimony and to determine all factual questions (see, Felt v Olson, 51 NY2d 977; Lopez v City of New York, 121 AD2d 369, 370; Hill v Bresnick, 112 AD2d 919). Whether to set aside a jury verdict as against the weight of the evidence is essentially a factual determination, and the standard to be applied is whether the jury could have reached its decision on any "fair interpretation of the evidence" (see, De Luca v Kameros, 130 AD2d 705; Quadrozzi v Norcem, Inc., 125 AD2d 559; Nicastro v Park, 113 AD2d 129).

In our view, the interpretation of the evidence evincing consent on the part of the plaintiff wife was properly for the consideration of the jury (see, Nicastro v Park, supra, at 133). "Where varying inferences may be drawn from the evidence adduced, the jury must resolve them" (O'Neil v Port Auth., 111 AD2d 375, 376).

Reviewing the evidence on the issue of consent and/or acquiescence on the part of the plaintiff, we conclude that the uncontradicted testimony of the defendant that the plaintiff wife was hostile to him since December 1980 and that she stated in 1983 that she had had no desire to have sexual

relations with him for the previous three years was sufficient to support the verdict in favor of the defendant. Although our dissenting colleagues characterize the plaintiff's statement as merely "an expression of the plaintiff's extreme displeasure with the defendant at the time of its utterance" (at —), the plaintiff did not express herself in that manner at the trial. Indeed, the plaintiff testified that it was "not unlikely" that she made the statement attributed to her by the defendant. That the jury was concerned with the "consent" element was demonstrated by one of its questions to the court during deliberations which inquired, "[w]hen did mutual consent of no sexual relationship occur?". In our view, the jury was in the best position to determine whether the plaintiff was merely expressing displeasure or indicating her consent to the lack of a sexual relationship, and we decline to disturb that determination.

Accordingly, the verdict in favor of the defendant was based on a fair interpretation of the evidence and is hereby reinstated. Rubin, J. P., Spatt and Sullivan, JJ., concur.

Weinstein, J., concurs in part and dissents in part with the following memorandum in which Eiber, J., concurs: After reviewing the factual issues presented by this case pursuant to the directive of the Court of Appeals upon remittitur, I cannot adhere to the majority's conclusion that there was sufficient evidence of consent or acquiescence on the part of the plaintiff wife to support the jury verdict against her on the cause of action predicated on constructive abandonment. On the contrary, I now conclude that the trial court properly set aside the verdict in favor of the defendant. Upon reviewing the facts, I find the jury's verdict to have been against the weight of the evidence.

The standard for setting aside a verdict on the ground that it is against the weight of the evidence differs substantially from that used to ascertain whether the verdict must be set aside as a matter of law. Essentially, a verdict should be set aside as against the weight of the evidence when that verdict could not have been reached by " 'any fair interpretation of the evidence' " *(Fuld v Ford Motor Co.,* 134 AD2d 482; *De Luca v Kameros,* 130 AD2d 705, 706; *Nicastro v Park,* 113 AD2d 129, 134-135). Such a determination "requires a discretionary balancing of many factors" *(Nicastro v Park, supra,* at 133). As this court has recently explained, "[i]n the application of this standard the trial court should keep in mind that '[a] preeminent principle of jurisprudence in this area is that the discretionary power to set aside a jury verdict and order a

new trial must be exercised with considerable caution, for in the absence of indications that substantial justice has not been done, a successful litigant is entitled to the benefits of a favorable jury verdict' " *(Green v City of New York,* 138 AD2d 676, citing *Nicastro v Park, supra,* at 133).

It is beyond cavil that no ground for divorce exists where the complaining spouse, through long acquiescence, has consented to a sex-limited relationship with his or her spouse *(Hammer v Hammer,* 34 NY2d 545, 546; *Filippi v Filippi,* 53 AD2d 658, 659). "A refusal or failure to engage in marital relations, to rise to the level of constructive abandonment, must be unjustified, willful, and continued, despite repeated requests from the other spouse for resumption of cohabitation" (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 170:7, at 608, citing *George v George,* 34 AD2d 888).

The uncontradicted evidence of the parties reveals that they had not engaged in sexual relations for more than one year prior to the institution of the underlying divorce action. The record in the instant case reveals no mutual decision by the parties to forego sexual relations for such a prolonged period of time. On the contrary, the plaintiff has presented ample evidence of her dissatisfaction with the relationship and her attempts to remedy the situation. In response to her verbal advances, the defendant would make such comments as the following: "[W]hen you have a house in Scarsdale sex shouldn't be the focus of a marriage" and "you don't need sex in a marriage if you have a house in Scarsdale". Another "explanation" proffered by the defendant for his lack of interest in sex was that he was providing her with a form of birth control to ensure that she did not become pregnant again. The plaintiff, on several occasions, sought to obtain professional counselling in an effort to save the marriage. When she requested that he accompany her to a Dr. Muroff in order to discuss their marital problems, the defendant informed his wife that the only way he would see Dr. Muroff was with a baseball bat and that all he ever wanted to do was to bash in Dr. Muroff's head. On only one occasion did the defendant discuss with a marriage counselor his refusal to engage in sexual relations with his wife. The defendant thereafter refused to attend any further sessions. This refusal on the defendant's part cogently evinced the lack of any desire on his part to maintain and salvage the parties' marriage. In view of the plaintiff's documented efforts to salvage the failing marriage, her statement of October 1983 to the effect that she had

not had any desire to have sexual relations with the defendant for the previous three years cannot reasonably be construed as an expression of consent to a sex-limited marriage. At worst, that isolated statement can be viewed as an expression of the plaintiff's extreme displeasure with the defendant at the time of its utterance. On the contrary, the plaintiff has adequately supported the claim that the defendant constructively abandoned her (cf., Nicholson v Nicholson, 87 AD2d 645).

Accordingly, the verdict was properly set aside by the trial court, albeit for reasons other than those expressed there. Based on my conclusion that the verdict was against the weight of the evidence, I vote to set aside the verdict and remit the matter to the Supreme Court, Westchester County, for a new trial.