■ RICHARD E. WENDLING, Respondent, v ARTHUR LOVEJOY, Respondent. (Action No. 1.) RICHARD E. WENDLING, Respondent, v STAR TRUCK RENTALS, INC., et al., Appellants. (Action No. 2.)—In consolidated actions to recover damages for personal injuries, the defendants in action No. 2, Star Truck Rentals, Inc., Lester Ambrose and X-Cel Transporting, Inc., appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Nassau County (Saladino, J.), dated August 12, 1988, as, upon a jury verdict finding them to be 90% at fault in the happening of the accident, is in favor of the plaintiff and against them in the principal sum of $202,500.

Ordered that the judgment is reversed insofar as appealed from, on the law, without costs or disbursements, the complaints insofar as they are asserted against the defendants Star Truck Rentals, Inc., Lester Ambrose and X-Cel Transporting, Inc., and the cross claim by Arthur Lovejoy against them are dismissed, and the action against the defendant Arthur Lovejoy is severed.

This case involves a motor vehicle accident which occurred at approximately 2:00 P.M. on January 23, 1984, on a stretch of the Queens Boulevard service road, which is a three-lane roadway. This service road is straight and the lanes are demarcated by broken white lines. The far right lane is designated as a curb or parking lane and the two lanes to the left are for moving traffic. It is undisputed that the 18-wheel tractor trailer which was owned by the appellant Star Truck Rentals, Inc., and leased to the appellant X-Cel Transporting, Inc., was being driven by the appellant Lester Ambrose in the extreme left lane. The trailer came into contact with the defendant Arthur Lovejoy's passenger car which was being operated in the middle lane. As the result of this contact,

Lovejoy's vehicle careened into the plaintiff's truck, which was parked in the extreme right lane of the service road. The plaintiff, standing to the rear of his parked truck as his father-in-law worked on securing their cargo, was injured when Lovejoy's vehicle struck him.

Although Lovejoy stated that Ambrose's trailer had entered the middle lane in which he was traveling, he admitted that he first observed Ambrose's vehicle after he had struck the plaintiff's truck. He added that while he "heard the sound of the tractor-trailer hitting the side of [his] car", he first realized that he had been in an accident when he heard the sound of breaking glass which was caused by the impact with the plaintiff's truck. Lovejoy admitted that he never looked in his rear- or side-view mirrors, and conceded that he simply looked straight ahead. He further acknowledged that he never observed the lane markings at the time of the impact with Ambrose's trailer, but "assume[d]" that Ambrose's trailer struck him. While Lovejoy claimed that he honked the car's horn prior to the accident, by his own admissions, he was completely unaware of the road conditions and the traffic surrounding him. Lovejoy's testimony, that Ambrose's trailer entered his lane, is belied by his admissions that he never saw the trailer until after he collided with the plaintiff's truck and that he was unaware of the lane markings at the time of the accident.

On the other hand, both Ambrose and the plaintiff testified that Ambrose was at all times in his lane and that Lovejoy had entered Ambrose's lane. Indeed, the plaintiff stated that he observed both vehicles approaching his parked truck and testified "I saw Lovejoy leave his lane and go into the left lane and hit the Mack truck * * * the tire of the Mack truck was still in its lane * * * I saw Lovejoy, that car, veer to the left". Even after Lovejoy's counsel asked the plaintiff "And you know also that the people who own and operate or lease or drive the Mack truck are defendants in this case", the plaintiff repeated that Ambrose was within his lane and that Lovejoy left his lane and came into contact with Ambrose's trailer. In short, the plaintiff's testimony completely exonerated Ambrose.

Although particular deference should be accorded to jury verdicts where there is a clash of factual contentions *(see, Leahy v Kontos,* 112 AD2d 356), in this case, there is no valid line of reasoning and permissible inferences which could lead rational men to the conclusion reached by the jury *(see, Cohen v Hallmark Cards,* 45 NY2d 493; *Nicastro v Park,* 113 AD2d

129). Therefore we conclude that the evidence adduced was legally insufficient to sustain the verdict. There is unequivocal testimony from both the plaintiff and Ambrose that Lovejoy crossed over into Ambrose's lane and made contact with Ambrose's truck causing the Lovejoy car to veer right and collide with the plaintiff's parked truck and the plaintiff himself. In light of this unequivocal testimony, we find, as a matter of law, that the appellants' motion at the close of the trial to dismiss the complaint and cross claim against them should have been granted.

In view of this determination, we do not reach the remaining contentions advanced by the appellants. Mangano, J. P., Lawrence, Kunzeman and Eiber, JJ., concur.