■ HENRY CALANDRILLO et al., Respondents, v EAST NASSAU MEDICAL GROUP et al., Appellants.—In an action to recover damages for medical malpractice, etc., the defendants appeal from a judgment of the Supreme Court, Nassau County (McCabe, J.), entered June 22, 1990, which, upon a jury verdict,

awarded damages in the principal sum of $700,000 for the plaintiff Henry Calandrillo's past pain and suffering and the principal sum of $200,000 for the plaintiff Brunetta Calandrillo's loss of her husband's services.

Ordered that on the court's own motion, Henry Calandrillo, as administrator of the estate of Brunetta Calandrillo, is substituted as a party plaintiff for the late Brunetta Calandrillo, and the caption is amended accordingly; and it is further,

Ordered that the judgment is reversed, on the facts and as an exercise of discretion, without costs or disbursements, and a new trial is granted on the issue of damages only, unless within 20 days after service upon the plaintiff of a copy of this decision and order, with notice of entry, he shall serve and file in the office of the Clerk of the Supreme Court, Nassau County, a written stipulation consenting to reduce the verdict as to damages from $700,000 to $500,000 for pain and suffering and from $200,000 to $100,000 for loss of services; in the event the plaintiff so stipulates, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements.

This action was brought by the plaintiff to recover damages for medical malpractice and loss of services arising out of a series of urological diagnoses, operations, and procedures carried out by the defendant doctors Syrus Tirgary and Bhushan Lal Khashu. The jury, in interrogatories posed to them, found that each defendant was liable on two grounds. The jury found that Dr. Tirgary initially failed to adequately test the plaintiff's bladder for neurological responsiveness prior to performing a prostatectomy, and subsequently, rather than recommending intermittent self-catheterization, employed an in-place Foley catheter inserted in the plaintiff's urethra, which resulted in severe urethritis. However, the jury concluded that Dr. Tirgary had properly performed the prostatectomy.

The plaintiff's expert testified extensively to the effect that Dr. Tirgary's failure to perform more thorough testing of the plaintiff's bladder responsiveness prior to performing the prostatectomy had been a deviation from good and accepted medical practice. However, given the jury's finding that the prostatectomy had in any event been proper, there remained no basis upon which the jury could have concluded that Dr. Tirgary's failure to perform more extensive testing of the plaintiff's bladder was a proximate cause of any injury to the

plaintiff. The objective of performing the more extensive testing would have been to determine whether or not prostate blockage was a possible contributing factor for the plaintiff's difficulty in urinating. Since the jury found that the prostatectomy was properly performed, it necessarily concluded that the failure to perform more extensive testing of the bladder's neurological responsiveness did not result in any injury. However, concerning Dr. Tirgary's use of the Foley catheter, although the parties' experts differed sharply on the merits of this procedure as opposed to intermittent self-catheterization, it cannot be said that the jury could not have found Dr. Tirgary negligent for this act under any fair interpretation of the evidence (see, Nicastro v Park, 113 AD2d 129). The jury was free to give the varying opinions the weight it saw fit (see, Naveja v Hillerest Gen. Hosp., 148 AD2d 429), and it cannot be said that the plaintiff's expert was incredible as a matter of law (see, Donohoe v Goldner, 168 AD2d 412).

The jury found that after having performed the cystostomy operation, which was made necessary by the Foley catheter-induced urethritis, Dr. Khashu improperly informed the plaintiff that he would permanently require the cystostomy. The jury also found that Dr. Khashu improperly failed to test the plaintiff's bladder during the 1-½ years that he remained the plaintiff's treating physician. Not until over 10 years later did the plaintiff discover, through the intervention of another physician, that his bladder could function effectively and that the cystostomy was no longer required. At the trial, the plaintiff's expert testified that a nonfunctioning bladder could recuperate in as little as one week. Although this witness agreed that in some cases the condition could end up being permanent, he insisted that this could not be predicted and that the proper course of treatment was to periodically test the bladder for responsiveness. Similarly the defendants' expert agreed that nonfunctioning bladders are capable of recuperating in a period of from one month to a few years. Given this evidence the jury clearly could have concluded that Dr. Khashu's improper advice and failure to test the plaintiff's bladder resulted in the plaintiff having been unnecessarily subjected to the manifold discomforts of the cystostomy for a period of many years (see, Nicastro v Park, supra).

We find that the amounts of damages awarded were excessive in that they deviate materially from what would be reasonable compensation.

We have examined the defendants' remaining contentions

and find them to be unpreserved for appellate review. Miller, J. P., Copertino, Pizzuto and Santucci, JJ., concur.