■ JUDITH SMITH, Appellant, v ARTHUR CUSTODIO et al., Respondents. [616 NYS2d 543] —In an action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Queens County (Berkowitz, J.), dated July 22, 1992, which granted the defendants' motion to set aside a jury verdict in favor of the plaintiff and against them in the principal sum of $195,000 and ordered a new trial unless the plaintiff consented to a reduced verdict of $60,000.

Ordered that the order is affirmed, with costs.

As a general rule, a jury verdict should not be set aside as being contrary to the weight of the evidence unless it can be said that the jury could not have reached its verdict based on any fair interpretation of the evidence (see, *Nicastro v Park,* 113 AD2d 129; *see also, Carter v Smalls,* 162 AD2d 431). A motion to set aside a verdict as being against the weight of the evidence is addressed to the sound discretion of the trial

court, which had the benefit of hearing and assessing the evidence. The trial court's exercise of its discretion to set aside the verdict and order a new trial will be accorded great respect upon appellate review *(see, Nicastro v Park, supra)*. "[T]hat discretion is at its broadest when it appears that the unsuccessful litigant's evidentiary position was particularly strong compared to that of the victor" and the "mere fact that some testimony in the record has created a factual issue does not deprive the Trial Judge of the power to intervene in an appropriate case" *(Nicastro v Park, supra,* at 135-136). Applying these principles to the case at bar, we find that the trial court acted appropriately in setting aside the verdict and ordering a new trial unless the plaintiff stipulated to a reduction of damages.

The plaintiff was visiting the home of the defendants when Rocky, the defendants' dog, lunged at her and bit her on the nose. The plaintiff claimed that the dog's lower jaw entered her mouth and that the dog bit her palate. The plaintiff further claimed that, as a result of the attack, she sustained a deviated septum, she developed breathing problems, and she developed temporomandibular joint (hereinafter TMJ) syndrome. However, upon reviewing the record, we find that the trial court correctly concluded that there was no evidence adduced at trial from which it could fairly be concluded that the lower jaw of the dog entered the plaintiff's mouth.

Dr. Elias, the dentist who was treating the plaintiff's TMJ problem, testified that the plaintiff had told him when she initially visited him some nine months after the incident that the dog's jaw had entered her mouth. Based on that information, Dr. Elias concluded that the plaintiff's TMJ problem was caused by the dog bite. Dr. Elias testified that the plaintiff must have suffered a trauma to her jaw as a result of the abrupt, forceful opening of her mouth by the dog, which caused the muscles to spasm and dislocated the disc and joint of her lower jaw. He then stated: "I think the trauma which results in the abrupt opening of the mouth can certainly do it. I think unless we're dealing with a very young child, trauma to the jaws as such typically doesn't cause temporal mandibular joint problems."

Although Dr. Elias based his conclusion upon the abrupt, forceful opening of the plaintiff's mouth by the dog in the attack, the plaintiff never testified to any such abrupt, forceful opening. In fact, the plaintiff testified that, just as Rocky jumped towards her, she leaned back and opened her mouth. The plaintiff's own testimony, therefore, establishes that her

mouth was already open when the dog bit her and that there was no abrupt, forceful opening of her mouth. Indeed, Dr. Elias's records fail to indicate that there was any abrupt, forceful opening of the plaintiff's mouth. Thus, Dr. Elias's conclusion is merely speculative and not based upon any of the numerous medical reports or other facts appearing in the record.

Moreover, it is not clear from the plaintiff's testimony how much the dog's lower jaw actually entered her mouth. The plaintiff's testimony was that the dog's "bottom teeth hit my top teeth. They went inside my mouth into the upper palate." The plaintiff did not testify whether just a few of the dog's bottom front teeth or whether more of the dog's lower jaw entered her mouth, nor did she testify regarding the angle at which the dog was biting. Thus, the jury was left to speculate with regard to how much, if any, of the dog's lower jaw entered her mouth.

Immediately after the attack, Joann Custodio, the defendants' daughter, treated the wound to the plaintiff's nose, and the plaintiff sat with her in the defendants' kitchen for about 45 minutes to one hour drinking coffee and talking. At the time, the plaintiff only complained about the injury to her nose, and she did not complain about injuries to her teeth or upper palate. Significantly, none of the medical records—particularly those of Dr. Greenberg, who first saw the plaintiff after the incident; those of Booth Memorial Hospital, where the plaintiff went to get a tetanus shot; and those of Dr. Rand, an ear, nose, and throat specialist whom the plaintiff visited shortly thereafter—indicate any injuries to the plaintiff's upper palate, nor do they indicate any complaints by the plaintiff of injury to her upper palate. Indeed, the plaintiff admitted that the only complaints she had made to Dr. Greenberg, to the doctors at Booth Memorial Hospital, and to Dr. Danziger (another ear, nose, and throat specialist whom she had seen after the incident), concerned her nose and that she had never mentioned anything to them about her teeth or upper palate.

Dr. Elias, the plaintiff's TMJ expert, indicated to the plaintiff, in a letter dated May 20, 1991, that certain "skeletal abnormalities are most certainly responsible for your complaints of temporomandibular joint pain and clicking and pain in the muscles of mastication." Dr. Elias testified that these skeletal abnormalities were congenital, i.e., they had been present in the plaintiff since birth. Dr. Elias told the plaintiff in his letter dated May 20, 1991, that her lower jaw had failed

to grow in a forward direction, that it had grown in an exaggerated downward direction, that her lower jaw was wider than her upper jaw, and that her inability to eat and the abnormal speech and swallowing difficulties that she had experienced were related to those skeletal defects.

It is clear, therefore, that the evidence that was adduced at the trial simply establishes that the only injury sustained by the plaintiff as a result of the dog bite was the injury to her nose. Contrary to the plaintiff's contentions, the evidence fails to establish that the dog bite caused her TMJ problems. Accordingly, the trial court did not improvidently exercise its discretion in setting aside the verdict *(see, Kushner v Mollin,* 181 AD2d 866). Balletta, J. P., Copertino, Friedmann and Goldstein, JJ., concur.