■ MARIA TORRICELLI, Individually and as Administratrix of the Estate of BLASCO TORRICELLI, Appellant-Respondent, v ANTHONY M. PISACANO, M.D., et al., Respondents-Appellants. [780 NYS2d 137]—

Judgment, Supreme Court, Bronx County (Paul Victor, J.),

entered September 11, 2003, which, following a jury trial, granted defendants' motion to set aside the verdict in favor of plaintiff, denied defendants' motion for judgment in their favor and ordered a new trial as to both liability and damages, unanimously modified, on the law, the facts and in the exercise of discretion, so as to deny defendants' motion to set aside the verdict as to liability and to order a new trial on damages, and otherwise affirmed, without costs, unless, within 30 days of service of a copy of this Court's order, plaintiff stipulates to a reduction in the verdict to $500,000 for the decedent's past pain and suffering and $50,000 for plaintiff's loss of services, and to entry of an amended judgment in accordance therewith.

In this action alleging medical malpractice in connection with surgery to extract a cataract from the decedent's right eye, the jury was asked to determine whether defendants departed from good and accepted standards of medical care by (1) failing to perform an anterior vitrectomy during the surgery and (2) failing to properly treat the postoperative swelling and/or edema in the decedent's eye. It found defendants liable on both issues and awarded plaintiff $1,000,000 in damages for the decedent's past pain and suffering and $1,000,000 on her claim for loss of services for the six years from October 16, 1995, the date of the surgery, to the decedent's death, of causes unrelated to this proceeding, on November 2, 2001.

Upon defendants' motion, the court set aside the verdict as against the weight of the evidence and ordered a new trial as to liability and damages. It found that plaintiff's expert's opinion that defendant should have performed a vitrectomy was undermined on cross-examination and that his circumstantially arrived at conclusions as to the postoperative edema in the decedent's eye were not supported by any fair interpretation of the evidence.

Plaintiff's expert, Dr. Ameet Goyal, testified that when an intracapsular cataract extraction is performed, the vitreous can move forward toward the front of the eye and, if allowed to remain there, can cause macular edema, which in turn can cause the vision in that eye to deteriorate. He stated his belief that this is what occurred in the decedent's case and his opinion that defendant departed from good and accepted medical practice by not performing a vitrectomy. Dr. Goyal testified that there was chronic inflammation in the decedent's eye for over six months, causing chronic changes in his vision, leading to the conclusion that the long-term macular edema caused deterioration in the decedent's vision.

On cross-examination, Dr. Goyal acknowledged that there was

no indication in either the operative report or any of the other records he reviewed that there was vitreous in the anterior chamber of the decedent's eye. However, he explained that the fact that the decedent's vision was decreased for a long time after the operation but improved following a steroid injection was consistent with the way a patient with swelling in the back of the eye responds to a steroid. On redirect, he explained further that, but for such swelling, there would be no reason to introduce a steroid into the eye.

It was brought out on cross-examination that five months before the decedent received the steroid injection his vision was 20/50 and that two months after the steroid was introduced into his eye his vision was 20/70, i.e., that, contrary to Dr. Goyal's testimony, the decedent's presteroid vision was better than his poststeroid vision. However, there was evidence that on the day that he received the steroid injection the decedent's vision was 20/70 minus 1 and that 3½ weeks later his vision was 20/50, i.e., that, in accordance with Dr. Goyal's testimony, the decedent's poststeroid vision was better than his presteroid vision.

"[I]n the absence of indications that substantial justice has not been done, a successful litigant is entitled to the benefits of a favorable jury verdict" (*see Nicastro v Park*, 113 AD2d 129, 133 [1985]). Thus, "the overturning of the jury's resolution of a sharply disputed factual issue may be an abuse of discretion if there is any way to conclude that the verdict is a fair reflection of the evidence" (*id.* at 135). The weight to be accorded the conflicting testimony of experts is "a matter 'peculiarly within the province of the jury' " (*Furia v Mellucci*, 163 AD2d 88, 89 [1990], *lv denied* 77 NY2d 803 [1991], quoting *Norfleet v New York City Tr. Auth.*, 124 AD2d 715, 716 [1986], *lv denied* 69 NY2d 605 [1987]). We cannot find here that the jury could not have reached its verdict on any fair interpretation of the evidence.

We find, however, that the damages award deviates materially from what would be reasonable compensation and should be modified to the extent indicated (CPLR 5501 [c]). Concur—Tom, J.P., Ellerin, Lerner and Gonzalez, JJ.