Houston v Koszer (2019 NY Slip Op 08827)





Houston v Koszer


2019 NY Slip Op 08827


Decided on December 11, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 11, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
REINALDO E. RIVERA
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2016-04538
 (Index No. 4872/12)

[*1]Patricia Houston, et al., appellants, 
v
Samuel Emanuel Koszer, etc., respondent, et al., defendants.


Hasapidis Law Offices, South Salem, NY (Annette G. Hasapidis of counsel), for appellants.
Steinberg Symer & Platt, LLP, Poughkeepsie, NY (Ellen A. Fischer and Carol Poles of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Dutchess County (James W. Hubert, J.), entered March 29, 2016. The judgment, upon a jury verdict, and upon the denial of the plaintiffs' motion pursuant to CPLR 4404(a) to set aside the jury verdict as contrary to the weight of the evidence and for a new trial, is in favor of the defendant Samuel Emanuel Koszer and against the plaintiffs dismissing the complaint.
ORDERED that the judgment is affirmed, with costs.
This action involves allegations of medical malpractice stemming from the medical treatment of the plaintiff Patricia Houston (hereinafter the plaintiff) by the defendant Samuel Emanuel Koszer (hereinafter the defendant) after she fell seriously ill during a multi-day music festival that she was attending in July 2011 with her husband, the plaintiff Colin Houston. At a jury trial, the following was elicited. On Sunday, July 17, 2011, at approximately 2:30 a.m., the plaintiff's husband found her unconscious and she was taken by ambulance to Columbia Memorial Hospital (hereinafter CMH). The doctors at CMH determined that the plaintiff's sodium level was critically low, so she was gradually administered saline to correct this condition. By 8:10 a.m., the plaintiff was assessed as nonresponsive, and at 11:30 a.m., she had a seizure. An order for a neurology consultation was written at 11:33 a.m. and was scanned in at 11:43 a.m. to the defendant's medical group, which had a contract with CMH to provide neurologic services Mondays through Fridays. The order did not note a need for urgency. The defendant's practice was not aware of the order until the morning of Monday, July 18, 2011, when the office opened.
On Monday, July 18, 2011, at 5:00 p.m., the neurological consultation was performed by a nurse practitioner. The defendant received a report from the nurse practitioner and proceeded to work up a differential diagnosis, concluding that the plaintiff had many symptoms of Central Pontine Myelinolysis (hereinafter CPM), including seizures, slurred speech, weakness of motor system in the extremities, and very low sodium levels. The defendant examined the plaintiff at approximately 8:30 a.m. the next day—July 19, 2011—and noticed that she had lost sensation in her legs. The defendant ordered a lumbar MRI, which confirmed a spinal cord injury and was not [*2]consistent with CPM. The MRI results reflected that the plaintiff had suffered a burst lumbar fracture with Cauda Equina Syndrome (hereinafter CES), although CES's hallmark symptom of saddle anesthesia was not present for the plaintiff. CES is a very rare condition that involves the compression of the nerves at the base of the spinal cord which, if left untreated, can cause permanent loss of function below the waist.
On July 19, 2011, the plaintiff was transferred to Vassar Brothers Medical Center, which was better equipped to perform the necessary surgery. After surgery was performed on July 22, 2011, the plaintiff was discharged the following week to Helen Hayes Hospital for rehabilitation, and remained there until early November 2011. The plaintiff presently requires the use of a wheelchair or crutches to ambulate, and requires at least four medications to treat pain and muscle spasms.
Following the jury trial, the jury returned a verdict in favor of the defendant and against the plaintiffs. The plaintiffs moved pursuant to CPLR 4404(a) to set aside the jury verdict as contrary to the weight of the evidence and for a new trial. The Supreme Court denied the motion, and the plaintiffs appeal from a judgment in favor of the defendant and against the plaintiffs dismissing the complaint.
The standard for determining whether a jury verdict was contrary to the weight of the evidence is "whether the evidence so preponderate[d] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence'" (Lolik v Big V Supermarkets, 86 NY2d 744, 746, quoting Moffatt v Moffatt, 86 AD2d 864, 864, affd 62 NY2d 875; accord Aronov v Kanarek, 166 AD3d 574, 575; Kearney v Papish, 136 AD3d 690, 690). This standard "was intended to accentuate the principle that when a jury, upon being presented with sharply conflicting evidence creating a factual dispute, resolved the controversy in favor of the defendant upon a fair interpretation of the evidence, that finding should be sustained" (Nicastro v Park, 113 AD2d 129, 134; Aronov v Kanarek, 166 AD3d at 575 [internal quotation marks omitted]). "Issues of credibility are for the jury, which had the opportunity to observe the witnesses and the evidence. Its resolution is entitled to deference" (Cicola v County of Suffolk, 120 AD3d 1379, 1382 [internal quotation marks omitted]). "It is within the province of the jury to determine an expert's credibility," and its resolution of "conflicting expert testimony is entitled to great weight, as it is the jury that had the opportunity to observe and hear the experts" (Saccone v Gross, 84 AD3d 1208, 1208-1209 [internal quotation marks omitted]).
Here, the jury's verdict was not contrary to the weight of the evidence. Although the plaintiffs furnished testimony reflecting that the defendant may have departed from accepted standards of care when he diagnosed CPM and failed to perform other tests to rule out other conditions explaining the plaintiff's paraplegia, which delayed surgery to relieve the compression of the nerves, the jury was entitled to credit the defendant's testimony to the contrary. Such testimony demonstrated that the neurological consultation was promptly provided after receiving the nonurgent order; that the short delay in diagnosis was credibly explained by the CPM symptoms and the rare phenomenon that is CES; and that the plaintiff was properly treated after her diagnosis by being promptly transferred to Vassar Brothers Medical Center for surgery.
The plaintiffs did not move for a directed verdict before the Supreme Court, and first request such relief on this appeal. Accordingly, the plaintiffs' argument that they should have been granted a directed verdict is unpreserved for appellate review (see Miller v Miller, 68 NY2d 871, 873; Donina v D.N.R. Group of Cos., Inc., 114 AD3d 720, 720; Volino v Long Is. R.R. Co., 83 AD3d 693, 693; Salony v Mastellone, 72 AD3d 1060, 1061; DeSimone v Royal GM, Inc., 49 AD3d 490, 491).
Accordingly, we affirm the judgment.
SCHEINKMAN, P.J., RIVERA, BARROS and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court