| Johnson v Dambreville |
|:---:|
| 2025 NY Slip Op 30031(U) |
| January 6, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 519504/2016 |
| Judge: Caroline Piela Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
HUBERT JOHNSON,                                          Index No.: 519504/2016

                            Plaintiff,

                                                         **DECISION AND ORDER**

            -against-

ALAIN DAMBREVILLE and NEW YORK CITY
TRANSIT AUTHORITY,

                            Defendants.
-------------------------------------------------------------------------X

**INTRODUCTION**

Plaintiff Hubert Johnson (hereinafter "Plaintiff") commenced the instant action against Defendant Alain Dambreville (hereinafter "Defendant Dambreville") and the New York City Transit Authority (hereinafter "Transit Authority") (collectively "Defendants") as a result of a motor vehicle accident involving Plaintiff's vehicle and a Transit Authority bus.

A brief recitation of the undisputed facts is as follows: on the morning of October 26, 2015, Defendant Dambreville operated a Transit Authority bus on the service road of Linden Boulevard, near its intersection with Hemlock Street in Brooklyn, New York. A concrete median separated the main road and the service road of Linden Boulevard. There is a single lane of travel on the service road, with cars parked along the curb on the right side of the road. There is a bus stop on the right side of the service road immediately before the intersection with Hemlock Street. Approximately adjacent to the bus stop, on the left side of the service road, there is a cut-out in the concrete median, allowing for vehicles from the main road of Linden Boulevard to merge onto the service road.

Preceding the accident, Defendant Dambreville stopped at the bus stop and several passengers boarded. Thereafter, Defendant Dambreville checked his driver's side mirror. He allowed two vehicles on the service road to pass, and then began to pull the bus out of the bus stop to continue down the service road. Simultaneously, Plaintiff was driving his red van down the main road of Linden Boulevard in the right lane. Plaintiff used the cut-out to merge from the main road onto the service road. Plaintiff's vehicle entered the service road around the same time as Defendant Dambreville was exiting the bus stop to continue down the service road, and the vehicles collided. The collision involved the front passenger's side bumper of Plaintiff's van and the front driver's side of the bus forward of the front left wheel.

A trial on the issue of liability was held in Part 11 of Kings County Supreme Court on April 29, 2024, and April 30, 2024. At the conclusion of trial, the jury was charged with, *inter alia*, Pattern Jury Instruction 2:26, Statutory Standard of Care—Vehicle and Traffic Law Violation. Specifically, the jury was instructed that, according to Plaintiff, Defendants violated the following Vehicle and Traffic Law provisions:

1

VTL § 1162: *No person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety.*

VTL § 1163: *No person shall turn a vehicle . . . from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal.*

VTL § 1203: *Every vehicle stopped, standing, or parked wholly upon a two-way roadway shall be so stopped, standing, or parked with the right-hand wheels of such vehicle parallel to and within twelve inches of the right-hand curb or edge of the roadway.*

The jury was also instructed that, according to Defendants, Plaintiff violated the following Vehicle and Traffic Law provisions:

VTL § 1101: *It is unlawful and, unless otherwise declared in this title with respect to particular offenses, it is a traffic infraction for any person to do any act forbidden or fail to perform any act required in this title.*

VTL § 1128(a): *Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rule[] … shall apply: (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.*

VTL § 1130: *1. Whenever any highway has been divided into two or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic-control devices or police officers. No vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space or at a crossover or intersection, as established, unless specifically authorized by public authority.*

*2. No person shall drive a motor vehicle or motorcycle onto or from any controlled-access highway except at the established entrances and exits thereof unless directed or permitted to use another entrance or exit by official traffic-control devices or police officers.*

VTL § 1143: *The driver of a vehicle about to enter or cross a roadway from any place other than another roadway shall yield the right of way to all vehicles approaching on the roadway to be entered or crossed.*

VTL § 1212: *Reckless driving shall mean driving or using any motor vehicle, motorcycle or any other vehicle propelled by any power other than muscular power or any appliance or accessory thereof in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway.*

2

[* 2]

*Reckless driving is prohibited. Every person violating this provision shall be guilty of a misdemeanor.*

Finally, the jury was instructed that drivers have a duty to see what is there to be seen. Specifically, the charge read as follows:

*Drivers have a duty to see what should be seen and to exercise reasonable care under the circumstances to avoid an accident.* <u>Zeeres v. Materi</u>, 94 A.D.3d 1111, 942 N.Y.S.2d 625 (2d Dep't 2021; <u>Filippazzo v. Santiago</u>, 277 A.D.2d 419, 716 N.Y.S.2d 710 (2d Dep't 2000); <u>Johnson v. Phillips</u>, 261 A.D.2d 269, 690 N.Y.S.2d 545 (1st Dep't 1999).

Following deliberations, the jury unanimously returned a verdict in favor of Defendants, finding they were not negligent and therefore not liable for the accident. Plaintiff now moves this Court, pursuant to CPLR 4404(a), to set aside the jury's verdict and enter judgment on the issue of liability in favor of Plaintiff, or in the alternative, directing a new trial on the issue of liability. The parties were heard at oral argument on this motion on December 2, 2024.

**LEGAL STANDARD**

In order to determine whether the jury verdict must be set aside, the Court must determine whether the jury's verdict is legally insufficient, contrary to the weight of the evidence, or against the interest of justice. CPLR 4404(a) allows the Court to set aside a jury verdict and either direct a judgment as a matter of law or order a new trial "where the verdict is contrary to the weight of the evidence [or] in the interest of justice…"

The Court must exercise caution when determining whether to set aside a jury verdict so as not to "unnecessarily interfere with the fact-finding function of the jury." <u>Nicastro v. Park</u>, 113 A.D.2d 129, 133 (2d Dep't 1985) (quoting <u>Ellis v. Hoelzel</u>, 57 A.D.2d 968, 969 (3d Dep't 1977)). Indeed, a successful litigant is entitled to enjoy a favorable jury verdict absent "indications that substantial justice has not been done." <u>Nicastro</u>, 113 A.D.2d at 133.

In analyzing a CPLR 4404(a) motion, courts distinguish between whether a jury verdict is against the weight of the evidence, which "is essentially a discretionary and factual determination," and whether a jury verdict is supported by sufficient evidence as a matter of law. <u>Nicastro</u>, 113 A.D.2d at 132 (citing <u>Cohen v. Hallmark Cards, Inc.</u>, 45 N.Y.2d 493, 498-99 (1978)).

*i.    Insufficient Evidence*

To set aside a jury verdict based on insufficient evidence as a matter of law, "there must be 'no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial.'" <u>Nicastro</u>, 113 A.D.2d at 132 (quoting <u>Cohen</u>, 45 N.Y.2d at 499). In other words, setting aside a verdict based on insufficient evidence requires a determination that the verdict is "utterly irrational." <u>Killon v. Parrotta</u>, 28 N.Y.3d 101, 108 (2016) (quoting <u>Campbell v. City of Elmira</u>, 84 N.Y.2d 505, 510 (1994)). This is a harsh test because such a determination "leads to a directed verdict terminating

3

[* 3]

the action without resubmission of the case to a jury." <u>Nicastro</u>, 113 A.D.2d at 132 (citations omitted).

> ii.     *Contrary to the Weight of the Evidence*

Setting aside a jury verdict as contrary to the weight of the evidence calls for a less stringent test as "such a determination results only in a new trial" and not in a directed verdict. <u>Nicastro</u>, 113 A.D.2d at 132-133 (citing <u>Cohen</u>, 45 N.Y.2d at 498). A court should determine that a jury verdict is contrary to the weight of the evidence only where "the jury could not have reached the verdict by any fair interpretation of the evidence." <u>Vittiglio v. Gaurino</u>, 11 A.D.3d 987, 988 (2d Dep't 2012) (citing <u>Lolik v. Big V Supermarkets</u>, 86 N.Y.2d 744, 745-46 (1995); <u>Nicastro</u>, 113 A.D.2d at 130).

> iii.    *Interest of Justice*

Courts may determine that the interest of justice requires setting aside a verdict where there are found to be "errors in the trial court's rulings on the admissibility of evidence, mistakes in the charge, misconduct, newly discovered evidence, and surprise." <u>Schuster v. Sourour</u>, 207 A.D.3d 491, 494 (2d Dep't 2022) (quoting <u>Duman v. Scharf</u>, 186 A.D.3d 672, 674 (2d Dep't 2020)). The Trial Judge "must look to his [or her] own common sense, experience and sense of fairness rather than to precedents" in deciding whether "substantial justice has been done [and] whether it is likely that the verdict has been affected." <u>Duman</u>, 186 A.D.3d at 674 (quoting <u>Morency v. Horizon Transp. Servs., Inc.</u>, 139 A.D.3d 1021, 1023 (2d Dep't 2016) (internal quotations omitted)).

**ANALYSIS**

Upon application of the aforementioned standards of law to the evidence and testimony produced at trial, the Court finds the jury's verdict to be legally sufficient and not contrary to the weight of the evidence. Moreover, the Court finds the interest of justice does not require setting aside the jury's verdict.

Much of the focus at trial pertained to what Defendant Dambreville was able to see while he attempted to pull away from the bus stop. Plaintiff argues that Defendant Dambreville gave inconsistent testimony with respect to what he was able to see. Specifically, Plaintiff argues that Defendant Dambreville initially testified that through his driver's-side mirror he could see 100 feet behind him on both the service road and main road. Plaintiff contends that Defendant Dambreville later altered his testimony to state he could only see 100 feet behind him on the service road and could see part of the cut-out. Plaintiff further argues that Defendant Dambreville finally altered his testimony by stating he could see the cut-out and five to ten feet back on the right lane of the main road.

On Plaintiff's counsel's direct examination of Defendant Dambreville, he testified that he could see back "at least 100 feet" through his rearview mirror. <u>See</u> Transcript, 21:1-8. The following question and answer ensued:

4

Q: Now, just so we are crystal clear on this issue, when you looked into that rearview mirror, you can to (sic) see back either 100 hundred feet or far as the eye can see, traffic was clear, yes?

A: Traffic was clear on the service road.

Q: Knowing that the cut out was there you obviously looked to see if any traffic was approaching the cut out from the Linden Boulevard, right?

A: Yes.

Q: There was no traffic coming from that either, right?

A: No. Just the service road.

Q: There was just traffic coming from the service road, but not on Linden Boulevard?

A: As I was exiting it was just the service road traffic.

See Transcript, 21:9-24.

On Defendants' counsel's direct examination of Defendant Dambreville, he testified that, through his driver's-side mirror, he was able to see 100 feet behind him on the service road but could not see 100 feet back toward his left, in the right lane of the main road. See Transcript, 89:15-90:3. He further testified that through his driver's-side mirror, he could not see the entire cut-out between the main road and service road but could see some of it. See Transcript, 90:4-11. On the portion of the cut-out that he did see, he testified that he did not see any vehicles approaching. See Transcript, 90:12-14. Defendant Dambreville testified that he saw two vehicles approaching on the service road as he was trying to pull the bus out of the bus stop, so he allowed them to pass before proceeding. See Transcript, 89:1-10. He testified that he used his turn signal when exiting the bus stop. See Transcript, 88:12-17.

On Plaintiff's counsel's cross-examination of Defendant Dambreville, he further testified, "I could see the cut out because it wasn't that far behind me, to the left of me." See Transcript, 105:9-11. Finally, when asked how far back he could see on the main road of Linden Boulevard while at the bus stop looking in his mirror, Defendant Dambreville stated, "On Linden Boulevard, five ten feet. Maybe twenty." See Transcript, 105:23-25.

Defendant Dambreville testified that he felt the impact to his bus "about six seconds" after he pulled away from the curb. See Transcript, 23:8-14.

On direct examination of the Plaintiff, Plaintiff testified that he was traveling in the far-right lane of Linden Boulevard and used the cut-out to merge onto the service road while using his right turn signal. See Transcript, 44:10-21. Plaintiff testified he was traveling about 30 miles per hour, slowed to about 15 miles per hour in the cut-out, and proceeded at about five miles per hour on the service road. See Transcript, 45:3-17. He testified that when he initially put his turn signal on, about 60 feet back from the cut-out, he could see the bus parked at the bus stop. See Transcript, 45:21-46:7. Plaintiff further testified that when he entered the service road, the bus did not have a turn signal activated. Plaintiff also testified that his van was by the front of the bus when the bus began pulling out. See Transcript, 46:19-48:5. Plaintiff testified that he stepped on his brakes because he was concerned the bus was not going to stop. See Transcript, 46:21-47:2. Plaintiff stated that the front left side of the bus crashed into the right front side of his van when he stopped his van. See Transcript, 49:2-17.

5

[* 5]

On cross examination of the Plaintiff, he testified:

A: The bus was not coming out when I was going into the turn.
Q: As you continued moving, you saw the bus pull out of the bus stop, correct?
A: Yes.
Q: Okay and when you saw this, you then stopped your van?
A: I stopped my van because he had no intention of stopping.

See Transcript, 64:21-65:4.

In addition to the testimony, the jury was shown a compilation of videos consisting of multiple camera angles taken from cameras on the bus. The videos show the bus beginning to inch out very slowly as two vehicles pass it on the service road. According to the videos' time stamp, the bus's movement out of the stopped position begins at 7:55:37. The second vehicle passes the front of the bus at 7:55:39, at which point the bus's velocity out of the bus stop increases as it continues down the service road. Plaintiff's van is first seen on video through the rear left window toward the rear of the bus at 7:55:40. At this moment, the bus is in motion pulling out of the bus stop. Plaintiff's van is seen approaching the front left side of the bus at 7:55:42, at which point the front of the bus appears to be fully facing down the lane of travel on the service road. Plaintiff's van and the bus appear to come into contact toward the front left side of the bus at 7:55:43, approximately six seconds after the bus started moving, and approximately four seconds after the second vehicle passed the bus and the bus started accelerating out of the stop.

Plaintiff's argument is essentially that Defendant Dambreville failed to see what was there to be seen. Specifically, based on the testimony, Plaintiff argues that Defendant Dambreville could not see the cut-out and could not see the area on the main road of Linden Boulevard approaching the service road. Therefore, Plaintiff argues, Defendant Dambreville violated VTL §1162 and §1163, constituting negligence per se, and the jury's verdict is contrary to the evidence in the record.

In opposition, Defendants argue that the testimony revealed Defendant Dambreville could see five to ten feet back in the cut-out and when he looked, he assessed that it was clear to proceed. Defendants argue that this is a credibility issue between the party witnesses, and that the jury was in the best position to assess credibility. See Bongiovanni v. Eckhardt, 176 A.D.3d 1157, 1159 (2d Dep't 2019) ("In determining whether to set aside a verdict as contrary to the weight of the evidence, deference must be accorded to the jury's assessment of the witnesses' credibility.") (citations omitted); Scalogna v. Osipov, 117 A.D.3d 934, 935 (2d Dep't 2014) ("It is for the jury to make determinations as to the credibility of the witnesses, and great deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses.") (citations omitted).

The Court agrees with Defendants that great deference must be accorded to the jury in assessing the credibility of the parties. Moreover, the Court finds that the jury's verdict is not "utterly irrational" and that a "fair interpretation of the evidence" could have certainly led to the verdict reached by the jury here. Finally, Plaintiff raises nothing to suggest that the interest of

6

[* 6]

justice requires a different verdict. The jury was presented with sufficient evidence at trial and reasonably found that Defendants were not liable for this accident.

**CONCLUSION**

Based on the foregoing, the jury reasonably found that Defendant Dambreville was not negligent. Plaintiff's motion to set aside the verdict is hereby denied.

Dated:  January 6, 2025

_____
Hon. Caroline Piela Cohen, J.S.C.

7

[* 7]