Krohn v Schultz Ford Lincoln, Inc. (2025 NY Slip Op 05072)

Krohn v Schultz Ford Lincoln, Inc.

2025 NY Slip Op 05072

Decided on September 24, 2025

Appellate Division, Second Department

Dillon, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 24, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER
BARRY E. WARHIT, JJ.

2022-07774
 (Index No. 30812/17)

[*1]Chanoch Krohn, respondent, 
v
Schultz Ford Lincoln, Inc., et al., appellants.

APPEAL by the defendants, in an action to recover damages for personal injuries, from an order of the Supreme Court (Thomas P. Zugibe, J.), dated September 15, 2022, and entered in Rockland County. The order, in effect, granted those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside so much of the jury verdict as, upon finding that the defendants were negligent, found that such negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue of liability.

Quintairos, Prieto, Wood & Boyer, P.A., New York, NY (Kathleen M. Mulholland of counsel), for appellants.
Certain & Zilberg, PLLC, New York, NY (Douglas Herring of counsel), for respondent.

DILLON, J.P.

OPINION & ORDER
The narrow question we must address to determine this appeal is whether the Supreme Court properly, in effect, granted those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside so much of the jury verdict as, upon finding that the defendants were negligent, found that such negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue of liability. We answer this question in the negative, holding that the court erred by, in effect, granting those branches of the plaintiff's motion where, as here, issues of negligence and proximate cause are not inextricably intertwined as a result of there being a rational view of the evidence that the plaintiff's accident did not occur as claimed. Additionally, this appeal provides the opportunity to state our view that, in a personal injury action where there were questions about whether the alleged injury-producing event actually occurred as claimed by the plaintiff here, it was not error for the court to respond to a jury note by instructing that the jury could consider whether the alleged accident occurred.
Relevant Facts
In February 2014, the plaintiff brought his van, which he had purchased used a few days earlier, to the defendants' business for the defendants to perform service and repair work on it. The plaintiff supposedly told the defendants, among other things, that the steering and the alignment "felt off." He later authorized the repairs that the defendants suggested. In early March 2014, the plaintiff picked up the van from the defendants after the work was completed and paid them more than $4,000.
On Sunday, May 25, 2014, the plaintiff, a professional musician, was scheduled to perform music at a bar mitzvah taking place in Far Rockaway. That morning, he left his home in Rockland County and drove the van toward the venue. He was accompanied in the van by his friend, [*2]Simcha Brodsky. Each person wore a seat belt. The van also contained musical instruments and equipment to be used for the event.
The plaintiff, testifying at trial subsequently, said that as the van exited from the Whitestone Bridge and merged onto the southbound direction of the Van Wyck Expressway, he heard a "metal clank sound." According to the plaintiff, the van "immediately . . . started veering off to the right, and it wasn't responding to any of my steering efforts." He started to apply the brake "but there really wasn't any time because the van just went crashing into the barrier on the right side of the Van Wyck." The van was traveling at approximately 50 miles per hour as it exited from the Whitestone Bridge. The plaintiff was unable to fully apply the brake before impact. He did not notice any appreciable decrease in his speed before impact. The impact with the concrete barrier was "definitely heavy." The main impact was on the passenger side of the van. The van "crashed into the side of the barrier, and then it kind of bashed off and kept on going forward and was crashing again, and it happened a couple of times until eventually it did come to a stop." This crashing into the barrier happened more than five times. During the crash, a subwoofer among the musical equipment became loose and crashed into and smashed one of the van's windows. The air bags did not deploy, and the van was not equipped with side air bags. Once the van came to a stop, the plaintiff made sure Brodsky was okay. The plaintiff described that "[w]e had just taken a massive hit. I was shaking. I was shaking. It was really a terrifying experience."
The plaintiff and Brodsky exited the van and called for a tow truck. The plaintiff could see that the side of the van had dents and scratches, that the big metal step along the van was bent, and that a window was smashed. The operator of the first tow truck to arrive indicated that he was unable to tow the van due to damage under the front part of the van. A second tow truck, this one a flatbed, arrived and, after a struggle, the tow truck operators were able to load the van onto the flatbed tow truck. The plaintiff explained that "it was difficult to get the van dragged off the side barrier, and that was because once they were able to pull it a little bit, I was able to see that one wheel is one direction, another wheel is in another direction, and the steering wheel wasn't connected to anything." The police were not called to the scene.
At the plaintiff's request, the operator of the second tow truck drove the plaintiff, Brodsky, and the van to the event venue, which was approximately 20 miles away. While in the tow truck, the plaintiff, realizing they were running late to the event, called a musician friend of his, Gershon Veroba, explained the situation, and asked Veroba to go to the venue to join the plaintiff's brother in performing music at the start of the event. After eventually arriving by tow truck, the plaintiff performed at the event. His family arranged for the van to be transported to a vehicle repair shop located closer to the plaintiff's home.
In 2017, the plaintiff commenced this action to recover damages for personal injuries, alleging that the defendants' negligent performance of repairs resulted in the collision and injuries to the plaintiff. The matter proceeded to a bifurcated jury trial held in May 2022. The plaintiff's trial evidence included, among other evidence, his testimony and the testimony of Victor Serby. Serby, an engineer and an attorney who had been retained by the plaintiff's lawyers as an engineer on some cases and who had worked with them as co-counsel on other cases, inspected the van on September 23, 2014, approximately four months after the alleged accident. Serby's opinion was to the effect that a part of the van's steering mechanism, the pitman arm, became detached from the steering box due to not being attached with the requisite force, causing the van's steering to fail to function. Serby opined, in part, that the pitman arm "was never properly torqued onto the vehicle with the specified 200 foot pounds in the Ford shop manual." During summation, defense counsel discussed evidence that the plaintiff did not present, including the trial testimonies of the passenger in the van, Brodsky, the friend, Veroba, and the tow truck operators, and raised the issue of whether the accident happened with the query, "Did the accident happen? That's for you to decide. I'm not even necessarily suggesting nothing happened. I can't tell you. I don't know."
The Supreme Court instructed the jury and provided it with a verdict sheet, which asked two questions. The first question asked, "[w]ere the defendants negligent?" The second question, which was only to be reached in the event the jury answered affirmatively on the first question, asked, "[w]as that negligence a substantial factor in causing plaintiff's accident?" The jury sheet did not include a special verdict question about whether the accident occurred.
The jury sent a note to the Supreme Court during its deliberations. That note read, "[t]he second question presumes there was an accident. Are we to assume that there was an accident, [*3]or is that part of our deliberation?" After reading the note to and conferring with counsel, the court answered the question by, inter alia, summarizing the plaintiff's testimony regarding the collision. The court instructed the jury, in part, "[i]f you believe that testimony, then you could reasonably conclude that there was an accident. If you don't believe that testimony, you can conclude that there is no accident. That's your determination. So you heard testimony, and you are to consider the weight, if any, to give to that." Not long after, the jury returned its verdict, finding that the defendants were negligent but that the negligence was not a substantial factor in causing the collision.
The plaintiff moved, among other things, pursuant to CPLR 4404(a) to set aside so much of the jury verdict as, upon finding that the defendants were negligent, found that such negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue of liability. The defendants opposed the motion.
In the order appealed from, dated September 15, 2022, the Supreme Court, in effect, granted those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside so much of the verdict as, upon finding that the defendants were negligent, found that such negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue of liability. The court properly noted that motions to set aside verdicts for the insufficiency of evidence and motions to set aside verdicts as contrary to the weight of the evidence are governed by two different legal standards. As between the two standards, the court concluded that there was no valid line of reasoning or permissible inferences that could allow the jury to rationally reach its conclusion. The court, in effect, set aside the jury's verdict that the accident did not proximately occur on the ground that there was insufficient evidence to sustain that verdict, ordered that a judgment be entered in favor of the plaintiff on the issue of liability, and directed the scheduling of a future trial on the issue of damages. We do not treat the order appealed from as setting aside the verdict as contrary to the weight of the evidence [FN1]. The defendants appeal.
I. Weight of the Evidence Versus Insufficiency of the Evidence
The Supreme Court, in the order appealed from, and the parties, in their briefs, have confused or used interchangeably, the legal insufficiency and weight of the evidence standards under CPLR 4404(a).
CPLR 4404(a) permits the court to set aside the jury's verdict, upon motion of any party or at its own initiative, if, inter alia, a party is entitled to judgment as a matter of law, or it may order a new trial if the jury's verdict is contrary to the weight of the evidence. The statutory reference to "judgment as a matter of law" regards the insufficiency of the evidence (id.). The bench and bar are reminded that insufficiency and weight are distinct concepts that should not be confused [*4]with one another. Insufficiency looks at whether the jury could legally, logically, and objectively reach its verdict based on the evidence presented. Its precise legal standard is whether there is a valid line of reasoning and permissible inferences by which a rational trier of fact could find in favor of the party (see Killon v Parrotta, 28 NY3d 101, 107-108; Cohen v Hallmark Cards, 45 NY2d 493, 499; Nicastro v Park, 113 AD2d 129, 132). Insufficiency is a question of law. When a verdict is set aside for the legal insufficiency of evidence, it is replaced with a judgment of the court in favor of another party to the action, and no new trial is held (see CPLR 4404[a]; Killon v Parrotta, 28 NY3d at 108; Cohen v Hallmark Cards, 45 NY2d at 500). While "sufficiency of the evidence" is the phraseology that is most often used in the reported literature, the more precise terminology is that of the "insufficiency of the evidence," as courts may only set aside verdicts under CPLR 4404 upon a finding that the evidence is insufficient to support the jury's verdict.
By contrast, weight of the evidence is a more malleable, qualitative, fact-based review of the verdict. The court looks at whether the evidence so preponderates in favor of a party that a contrary verdict could not have been reached on any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746; Thompson v Northwell Health, Inc., 234 AD3d 1006, 1007). If a verdict is set aside on the basis of the weight of the evidence, a new trial is held (see CPLR 4404[a]; Killon v Parrotta, 28 NY3d at 107-108; Cohen v Hallmark Cards, 45 NY2d at 498). The differences between insufficiency and weight are significant not only to the legal standards that are applied in deciding their respective applications but also to whether the court's determination is conclusive or subject to a new trial.
Courts and counsel are reminded that they should approach motions pursuant to CPLR 4404(a) by assessing whether the arguments for or against the setting aside of a jury's verdict are law-based insufficiency grounds regarding the elements and defenses to causes of action and the evidence presented (or not presented) to either or, alternatively, the more fact-based assessment of the quantum of evidence presented to establish a claim or defense.
II. The Setting Aside of the Verdict
The parties dispute whether the Supreme Court properly, in effect, granted that branch of the plaintiff's motion which was to set aside so much of the jury verdict as found that the defendants' negligence was not a substantial factor in causing injury to the plaintiff and directed judgment as a matter of law on the issue of liability in the plaintiff's favor. As noted above, CPLR 4404(a) permits a court to set aside a verdict or any judgment entered thereon and direct that a judgment be entered in favor of a party entitled to judgment as a matter of law. "To sustain a determination that a jury verdict is not supported by sufficient evidence, as a matter of law, there must be 'no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial'" (Nicastro v Park, 113 AD2d at 132, quoting Cohen v Hallmark Cards, 45 NY2d at 499). "When it can be said that 'it would not be utterly irrational for a jury to reach the result it . . . determined . . . , the court may not conclude that the verdict is as a matter of law not supported by the evidence'" (Campbell v City of Elmira, 84 NY2d 505, 510 [emphasis omitted], quoting Cohen v Hallmark Cards, 45 NY2d at 499). "The test is a harsh one because a finding that a jury verdict is not supported by sufficient evidence leads to a directed verdict terminating the action without resubmission of the case to a jury" (Nicastro v Park, 113 AD2d at 132).
In considering such a motion, "the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (Szczerbiak v Pilat, 90 NY2d 553, 556). Where there is a reasonable view of the evidence under which it is logically possible to reconcile a finding of negligence but no proximate cause, it will be presumed that, in returning such a verdict, the jury adopted that view (see Cruz-Rivera v National Grid Energy Mgt., LLC, 190 AD3d 687, 688; Wilson v Philie, 107 AD3d 700, 702).
The Supreme Court by, in effect, setting aside the jury's liability verdict in this instance, did so on the basis of what was essentially a two-tiered factual and legal analysis. As to the first tier, the court viewed the action as being one where the issues of negligence and proximate cause were so inextricably interwoven that there could not be one without the other. More specifically, the court noted unrefuted evidence of the defendants' earlier defective repair to the vehicle's steering mechanism. As to the second tier of analysis, the court noted that the plaintiff's evidence about the accident "was generally uncontroverted," as there were no alternate theories of negligence in the trial record, making it impossible to conclude anything other than that the [*5]negligently-repaired steering mechanism was the proximate cause of the plaintiff's accident.
This appeal provides us with an opportunity to discuss two issues—the concept of negligence and proximate cause being inextricably intertwined, and the nature of the jury's charge and verdict sheet on negligence and proximate cause.
III. Inextricably Intertwined
Negligence and proximate cause are two necessary parts to any finding of liability. When there is a line of demarcation between negligence and proximate cause, a jury's verdict finding the first but not the second does not warrant the setting aside of a verdict under CPLR 4404(a) (see Cruz-Rivera v National Grid Energy Mgt., LLC, 190 AD3d at 688-689; Correa v Abel-Bey, 188 AD3d 641, 642-643; McKenzie v Southside Hosp., 163 AD3d 952, 953; McGloin v Austin, 89 AD2d 583, 583-584). Conversely, where issues of negligence and proximate cause are inextricably intertwined, courts may set aside a verdict where negligence is found but proximate cause is not (see Evans v New York City Tr. Auth., 179 AD3d 105, 113; Alexander v City of New York, 21 AD3d 389, 390). A recent example of where negligence and proximate cause were found to be inextricably intertwined as to require the setting aside of the verdict where the jury found one but not another, is the case of Brewer v Ross (188 AD3d 780). In Brewer, the plaintiff was working upon a scaffold that allegedly was struck by a Bobcat machine operated by another person, and the plaintiff sustained an alleged injury as a result. On the issue of common-law negligence, this Court concluded that the issues of negligence in the operation of the Bobcat and its proximate cause to the occurrence were not logically severable as they were inextricably intertwined (see id., at 783). Examples of the same concept may be found in the realm of medical malpractice actions, such as in Swavely v Zhou (86 AD3d 947), where a physician's negligence in puncturing a decedent's heart during surgery, which caused death, was inextricably interwoven with its causality as to make it impossible for the jury to have found a departure from the medical standard of care without also finding proximate cause.
If, as the Supreme Court concluded in this instance, the jury's deliberation involved an uncomplicated determination of whether the defendants had negligently installed the pitman arm of the plaintiff's van, which, in turn, resulted in the plaintiff's loss of steering and the accident as described, then the jury's finding of negligence without a finding of proximate cause would be inconsistent. But the trial evidence was not so uncomplicated as to be subject to only one view of the events. Here, viewing the evidence in the light most favorable to the defendants, as we must in these instances, there was a valid line of reasoning and permissible inferences upon which the jury could parse the alleged negligent repair from the alleged proximate cause and determine that while the defendants were negligent, they were not a proximate cause of the plaintiff's claimed accident (see Cohen v Hallmark Cards, 45 NY2d at 499; Rubino v Scherrer, 68 AD3d 1090, 1092).
More specifically, the plaintiff's trial testimony was to the effect that his van, which had been traveling at a speed of approximately 50 miles per hour on an expressway, impacted a concrete barrier at least five times. He described the impact with the barrier as "definitely heavy." Despite having "just taken a massive hit" and enduring "a terrifying experience," the plaintiff arranged to be taken to the event venue where he proceeded to perform music. The plaintiff did not produce the van's passenger, Brodsky, the friend, Veroba, the plaintiff's brother, or any other witness, such as either tow truck operator, to testify about the alleged collision or its aftermath. The plaintiff also did not call the police to the heavily trafficked scene at the southbound direction of the Van Wyck Expressway, and therefore, there was no police report corroborating the accident after-the-fact. The plaintiff testified that he made arrangements for a post-collision tow of the vehicle to an initial location and, thereafter, to Rockland County, but no record or invoice of either tow was proffered into evidence. Although the plaintiff offered photographs marked as Trial Exhibit D purporting to show damage to the van, those photos, perhaps most significantly, do not depict the sort of far greater damage as would be expected when the side of a vehicle, initially traveling at approximately 50 miles per hour, experiences "heavy" impacts with a concrete barrier at least five or more times.
The foregoing necessarily led the jury to consider whether the alleged accident happened at all. That is evidenced by the jury's sole note to the Supreme Court inquiring if its deliberations included consideration of whether the accident occurred. The jury wrote that the verdict sheet's "second question presumes there was an accident. Are we to assume that there was an accident, or is that part of our deliberation?" In response, the court instructed the jury, among other things, that "[i]f you don't believe that testimony, you can conclude that there is no accident." The jury rendered its verdict shortly thereafter, answering "no" to the question on proximate cause.
Under the circumstances of this case, it was not irrational for the jury to conclude that although the defendants negligently performed work on the plaintiff's van, the negligent work was not a substantial factor in causing the alleged accident as claimed by the plaintiff. The jury all but said as much through its deliberative question to the Supreme Court and the verdict that followed. Its doing so was consistent with the jury's obligation to review the trial evidence, assess its credibility, draw reasonable inferences from the photographic and other evidence, apply the plaintiff's burden of proof, and render a verdict accordingly. As argued by the defense in summation, the plaintiff failed to produce for testimony Brodsky, Veroba, the plaintiff's own brother, or either tow truck operator. He did not produce any tow invoices. The photographs of the plaintiff's van revealed damages, which a rational jury could conclude were not consistent with the nature of the described vehicular impact. The line of reasoning outlined here does not amount to impermissible speculation but instead addresses whether, in the jury's view, the plaintiff met his burden of proof as to all necessary elements of his cause of action (see Kirwan v New York City Tr. Auth., 199 AD3d 907). We therefore conclude that the Supreme Court erred by, in effect, granting those branches of the plaintiff's motion which were to set aside so much of the jury verdict as found that the defendants' negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue of liability.
IV. The Jury Instructions
Where trial evidence raises the issue of whether negligence and proximate cause are inextricably intertwined, versus whether the negligent event may not have occurred as claimed, the jury verdict sheet should not be drafted or construed as to take away from the jury the determination of the latter issue. Contrary to the plaintiff's contention, the Supreme Court did not err in instructing the jury in response to its note that it could consider whether the plaintiff's accident had occurred (see Duran v Temple Beth Sholom, Inc., 155 AD3d 690, 693-694 ["Supreme Court erred in denying the plaintiffs' request to ask the jury to determine not only whether the temple violated Labor Law § 240(1), but also to determine whether Duran fell off the beam. Under the particular circumstances of this case, this constituted a fundamental error warranting a new trial because the court's instructions failed to explain to the jury that, in light of arguably inconsistent accounts of how the accident occurred, the jury was entitled to find that Duran did not fall from the beam or, alternatively, that he did fall from the beam but no safety device was required under Labor Law § 240(1)" (citations omitted)]).
A trial court must weigh competing principles when considering whether to ask the jury to determine if the alleged injury-producing event occurred as claimed by the plaintiff. On the one hand, there are trials where the question of whether the injury-producing event occurred as claimed by the plaintiff presents no factual dispute (see e.g. Canale v L & M Assoc. of N.Y., Inc., 155 AD3d 675, 677; Donohue v Chaudhry, 63 AD3d 876, 877). There are other cases where the happening of an accident may itself be contested (see e.g. Duran v Temple Beth Sholom, Inc., 155 AD3d 690; Casella v City of New York, 69 AD3d 549).
V. Miscellaneous
Even if this Court were to review the appeal under a weight of the evidence analysis, our conclusion would be the same. The plaintiff failed to establish that the evidence so preponderated in his favor that a contrary verdict could not have been reached on any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d at 746; Thompson v Northwell Health, Inc., 234 AD3d at 1007), taking into account the plaintiff's burden of proof at trial, determinations of credibility, the absence of certain forms of corroborative evidence, and an assessment of the evidence, including particularly the photographs in evidence.
As to weight, this case is distinguishable from Annunziata v City of New York (175 AD3d 438), where a verdict was set aside on appeal as contrary to the weight of the evidence, where the jury's conclusion that the accident was from some other cause or fabricated was wholly and impermissibly speculative. Here, for reasons discussed above, there was a fair interpretation of the evidence in support of the jury's verdict.
The plaintiff's remaining contentions are without merit.
Accordingly, the order is reversed insofar as appealed from, those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside so much of the jury verdict as, upon finding that the defendants were negligent, found that such negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue liability are denied, so much of the jury verdict as found that the defendants' negligence was not a substantial [*6]factor in causing injury to the plaintiff is reinstated, and the matter is remitted to the Supreme Court, Rockland County, for the entry of an appropriate judgment.
CONNOLLY, CHRISTOPHER and WARHIT, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside so much of the jury verdict as, upon finding that the defendants were negligent, found that such negligence was not a substantial factor in causing injury to the plaintiff and for judgment as a matter of law on the issue of liability are denied, so much of the jury verdict as found that the defendants' negligence was not a substantial factor in causing injury to the plaintiff is reinstated, and the matter is remitted to the Supreme Court, Rockland County, for the entry of an appropriate judgment.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1: Three times in the decision and order appealed from, the Supreme Court used the language of weight of the evidence, stating "[t]he Court determines that such a [liability] finding was against the weight of the evidence presented at trial"; that where negligence and proximate cause are inextricably interwoven as here, the jury's finding was "inherently contrary to the weight of the evidence"; and that the court "grants Plaintiff's motion to set aside the verdict as against the weight of the evidence." Nevertheless, we treat the decision and order as, in effect, setting aside the jury's verdict on the insufficiency of the evidence rather than its weight. In its meaningful analysis of the evidence, the court applied the legal standard that governs the legal insufficiency of evidence and noted that verdicts that are set aside as contrary to the weight of the evidence receive a new trial, whereas verdicts that are set aside for insufficiency do not. Elsewhere, the court stated there was "no valid line of reasoning and permissible inferences which could possibly lead rational [individuals] to the conclusion . . . that was reached by this jury," which is the language of insufficiency rather than weight. In one decretal paragraph, the court expressly directed that a judgment be entered on the issue of liability in favor of the plaintiff (meaning, that there was to be no new liability trial), and in another decretal paragraph, directed a conference for the scheduling of a damages-only trial. The consistent portions of the decision and the order are that of the insufficiency of the evidence. In Charalabidis v Elnagar (188 AD3d 44, 48), we noted that where there are inconsistencies between a decision and an order, the decision is to control. Here, the decision is itself internally inconsistent in rendering conclusions based on the insufficiency of the evidence and at other times based on weight of the evidence, but the clearest indicator of the court's ultimate intent is the ordered decretal paragraphs, which are consistent with the insufficiency portions of the court's decision.